ALONZO B. COMINS *et als.*, *vs.* INHABITANTS OF EDDINGTON.

*Town not liable for commutation advanced by its officers.*

Selectmen by obtaining on their own personal credit the money necessary to pay sums voted by the town for commutation to drafted men, and for the reimbursement of drafted or enrolled men who have procured substitutes, and paying the same directly to such persons, (the same not having passed through the town treasury) can acquire no right of action against the town to recover the same.

They stand in no better position than the original beneficiaries under such void votes before such payment was made.

ON REPORT.

ASSUMPSIT to recover moneys advanced to pay commutations, under the circumstances stated in the opinion.

*A. Sanborn* for the plaintiffs.

*Wilson & Woodard* for the defendants.

BARROWS, J.    Under an article in the warrant which ran thus : "to see if the town will raise money to pay the fines of drafted men," the defendant town at a meeting held August 20, 1863, "voted that the selectmen be instructed to raise money to pay all the men that are drafted and are not exempt from any cause, to those who will procure a substitute the sum of $250, and those who do not procure a substitute the sum of $200." The plaintiffs who were selectmen of Eddington in 1863, raised $2650 on their personal responsibility, and paid to all who were drafted, in sums of $250 each to five men who had procured substitutes, and to one who went personally, and $200 each to five men who neither procured a substitute nor went—one of whom (Oakes) had an additional $100 from the fund thus raised.    The selectmen gave their note at the bank for the money which they thus disposed of, and when it fell due August 12, 1864, the town paid on it $1484. When they went out of office they settled their account with the town.    The claim here sued was not in it, and the town books do

not indicate that any part of it was ever received into or paid out of the town treasury.

At the March meeting in 1870, under Art. 9 : "To see if the town will authorize the selectmen to settle with the men that hold a demand against the town for money paid for commutation which had been legalized by the State"—the town voted to give them such authority.

These are the undisputed facts in the case.

Whether a portion of the sum which these drafted men had was paid in town orders, and whether the town paid another sum of about $950 upon a note given at the same bank where the selectmen procured this loan, on account of the sum thus obtained by the selectmen, and thus in fact paid more than the amount which went to reimburse those who procured substitutes, leaving unpaid only a part of that which was given to commuters are matters left in doubt.

For reasons now to be stated we do not feel called upon to settle these controverted questions of fact.

No legislation or reiteration of the vote by the town could make valid the raising of money to pay commutation, or to reimburse those who had advanced it.   *Thompson* v. *Pittston*, 59 Maine, 545.

This disposes of the greater part of the claim.

As we have seen in the statement of the case, eleven hundred dollars of the sum raised upon the note of the selectmen were paid by them to four drafted men who were neither mustered into the military service of the United States nor procured substitutes.

It remains to be determined whether under and by virtue of the act of 1866, chap. 59, the plaintiffs can recover the small balance of moneys paid to those who furnished substitutes, which upon their showing remains unpaid by the town.

It is suggested that the attempted ratification of votes to reimburse those who had furnished substitutes was recognized by this court as binding and efficacious in *Barbour* v. *Camden*, 51 Maine, 608.

But no such doctrine can be deduced from that case.

That part of the vote of the town which was there held to be binding and obligatory when ratified by the legislature was "to pay to each citizen so drafted the sum of three hundred dollars when mustered into the service of the United States, or to his substitute when so mustered." The plaintiff held an order from a substitute who was actually mustered into the service. Payments and promises to pay to those who actually went into the service whether as volunteers, drafted men or substitutes have been held capable of legislative ratification, for reasons adverted to in *Barber* v. *Dixmont*, 53 Maine, 575 ; *Winchester* v. *Corinna*, 55 Maine, 9, and *Hart* v. *Holden*, 55 Maine, 572.

Thus far and no farther has the court recognized the validity of the ratification acts. *Barbour* v. *Camden* goes no farther ; for the plaintiff there was enforcing, under a regular assignment, the rights and claim of the substitute who went to the field.

The whole subject of donations by towns to individuals whose acts, business or outlays of money for their own private purposes may be deemed to be incidentally a benefit to the public also, has been so recently and so fully discussed in the opinion of the judges, 58 Maine, 591, *Allen* v. *Inhabitants of Jay*, 60 Maine, 124, and *Brewer Brick Company* v. *Inhabitants of Brewer*, 62 Maine, 62, that it is superfluous to go into any argument here to demonstrate the lack of power in a town to make a valid donation to one who has preferred to pay money to another, rather than to go into the military service of the country and in the legislature to delegate any such power to the town. A reference to the cases above mentioned in our own State, and to *Freeland et. al.* v. *Hastings*, 10 Allen, 570, will suffice.

In the ingenious argument of the plaintiffs' counsel it is claimed that this was a loan to the town by these plaintiffs and that they are not responsible for the illegal disposition of the money. But the facts do not sustain his hypotheses. This money never went into the treasury of the town—was not drawn from thence by the order of the selectmen—never was put into the town accounts by these plaintiffs—made no part of their claim against the town when they settled the account of their official doings.

It is plain that they were in some way induced to take upon their own shoulders the responsibility of furnishing and paying out this money, with the knowledge that the vote of the town gave them no legal authority to do it. Moreover they did not pursue the authority given by the town which seems to contemplate the raising of the money upon the credit of the town. They saw fit to undertake to make themselves creditors of the town by paying what they wrongly assumed might some day be recognized as valid claims against it.

They can stand in no better position than the original beneficiaries under the town votes. *Judgment for the defendants.*

APPLETON, C. J., WALTON, DICKERSON and DANFORTH, JJ., concurred.